IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2023

**STATE OF TENNESSEE v. RUSTY AMOS LONG**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC4-2016-CR-504      William R. Goodman III, Judge**

_____

**No. M2023-00427-CCA-R3-CD**

_____

The Defendant, Rusty Amos Long, appeals the Robertson County Circuit Court's order revoking his community corrections sentence for his conviction for burglary other than a habitation and ordering him to serve the remainder of his five-year sentence in confinement. The Defendant contends that the trial court erred by failing to conduct a new sentencing hearing and by failing to consider whether revocation was in the interests of justice. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Roger Nell, District Public Defender; Mitchell A. Raines (on appeal), Assistant Public Defender-Appellate Division; and Robert Martin (at trial), Assistant Public Defender, for the Appellant, Rusty Amos Long.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Robert J. Nash, District Attorney General; Jason White, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**

On February 24, 2017, the Defendant pleaded guilty to burglary other than a habitation, and the trial court sentenced him as a Range II offender to five years in the Tennessee Department of Correction, suspended to community corrections. On December 12, 2018, a violation warrant issued, alleging the Defendant failed to remain drug-free and to report as directed. On March 29, 2019, an absconder warrant issued,

alleging that the Defendant failed to report as directed, that he last reported on December 6, 2018, and that his whereabouts were unknown. Law enforcement arrested the Defendant on January 8, 2023, after a traffic stop, and a revocation hearing was held on February 24, 2023.

At the revocation hearing, Laquita Cox, the Defendant's community corrections case manager, testified that she began supervising the Defendant in February 2017. Ms. Cox stated that the Defendant admitted to using Adderall in September 2017, methamphetamines in October 2018, and Suboxone in October, November, and December 2018. Drug use forms signed by the Defendant were received as exhibits. Ms. Cox also identified a compliance form signed by the Defendant, which indicated that the Defendant tested positive for amphetamines and methamphetamines in September 2017. The form was received as an exhibit. Ms. Cox stated that the Defendant failed a drug screen in September 2017 as a result of the presence of Adderall. Ms. Cox said that the Defendant missed report dates four times in April 2018, three times in May 2018, four times in July 2018, and one time each in August and October 2018.

Ms. Cox testified that she tried to work with the Defendant. She said the Defendant told her that he was trying to "get off" drugs by using Suboxone, but he could not provide her with a prescription for its use. Ms. Cox stated that it was "always a tug of war" with the Defendant regarding his drug use. She also told the Defendant that she would seek a revocation warrant if he could not "get clean and stay clean[.]"

Ms. Cox testified that on December 6, 2018, she asked the Defendant to report for a random drug screen. The officer who accompanied the Defendant to the bathroom found that the Defendant was attempting to falsify the drug test. Ms. Cox stated that the Defendant admitted he had used Suboxone the day before the drug screen. Ms. Cox said the Defendant signed a non-compliance form which stated that attempting to falsify a drug screen was an automatic violation of his community correction sentence. She said the Defendant was advised that a warrant would be sought. Ms. Cox related that she never heard from the Defendant after that day. Ms. Cox stated that a violation warrant was obtained on December 12, 2018, and that an absconder warrant was obtained in March 2019.

The Defendant testified that he did not contest Ms. Cox's testimony regarding his drug use. The Defendant stated that his mother, who had been keeping his son, recently died from cancer and that his son's mother was incarcerated. The Defendant said that his best friend currently had legal custody of the Defendant's son. According to the Defendant, he needed to be out of jail by July in order to have a chance to regain custody of his son.

On cross-examination, the Defendant agreed that he had left the state to avoid the outstanding warrants and to get work in Maine and Indiana to support his son. He said that law enforcement officers identified him when he was "pulled over" in White House, Tennessee.

The trial court noted that "service of [the Defendant's] sentence with community corrections [had] not gone well." The court considered the Defendant's desire to take care of his son and the difficult circumstances in the Defendant's life. The court acknowledged that the Defendant was aware of his significant drug problem and was aware that he might need rehabilitation. The court found that the Defendant's drug use would negatively affect his ability to care for his son and himself. The court also found that community corrections had not benefited the Defendant. As a result, the court revoked the Defendant's community corrections sentence and ordered the Defendant to serve the remainder of his original sentence. This appeal followed.

The Defendant contends that the trial court erred by (1) failing to conduct a new sentencing hearing before reinstating the original sentence and (2) failing to consider whether revocation was in the interests of both the Defendant and the community. He does not contest on appeal that he violated the terms and conditions of his community corrections sentence. The State counters that the court did not abuse its discretion by ordering the Defendant to serve the remainder of his original sentence in confinement as a consequence of violating his community corrections sentence. We agree with the State.

A trial court may revoke a defendant's probation upon its finding by a preponderance of the evidence that the defendant violated a condition of the sentence. T.C.A. § 40-35-311(e) (2019) (prescribing the procedure for probation revocation proceedings). Given the similar nature of a sentence of community corrections and a sentence of probation, the same principles are applicable in deciding whether the revocation of a community corrections sentence is proper. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991).

In *State v. Dagnan*, our supreme court clarified the analysis to be used in probation revocation hearings. 641 S.W.3d 751, 753 (Tenn. 2022). Panels of this court have applied the *Dagnan* analysis to community correction revocation proceedings. *See State v. Clinton D. Braden*, No. M2022-00733-CCA-R3-CD, 2023 WL 196130, at *2 (Tenn. Crim. App. Jan. 17, 2023); *State v. Thomas Adam Blackwell*, No. M2020-01171-CCA-R3-CD, 2022 WL 16946493, at *4 (Tenn. Crim. App. Nov. 15, 2022); *State v. Casey Bryan Gibbs*, No. M2021-00933-CCA-R3-CD, 2022 WL 1146294, at *3 (Tenn. Crim. App. Apr. 19, 2022).

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as

the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Dagnan*, 641 S.W.3d at 759. An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan*, 641 S.W.3d at 759.

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2019). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

When a trial court determines that a defendant's community corrections sentence must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. The court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4) (2019). Generally, a separate hearing is not required, but the court must address the issue of sentence disposition on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Dagnan,* 641 S.W.3d at 757-58. Should the court impose a new sentence, it must conduct a sentencing hearing pursuant to the Sentencing Reform Act. *State v. Samuels*, 44 S.W.3d 489, 494 (Tenn. 2001).

The Defendant relies on the case of *State v. Tim Mattingly* to support the proposition that a new sentencing hearing was required. No. M2002-02765-CCA-R3-CD, 2003 WL 22038777 (Tenn. Crim. App. Sept. 2, 2003). We view *Tim Mattingly* as distinguishable. In *Tim Mattingly*, the defendant violated the terms of his community corrections sentence, and the trial court ordered him to serve an additional three years "day for day" in jail before serving the remainder of his community corrections sentence.

As a result, the trial court lengthened the defendant's sentence. This court held that because the trial court effectually resentenced the defendant, a new sentencing hearing was necessary. *Id.* at *2.

In the present case, the trial court did not increase the length of the Defendant's sentence as punishment for the community corrections violation, nor did it resentence the Defendant. Unlike in *Tim Mattingly*, the court revoked the Defendant's community corrections sentence and ordered the Defendant to serve the remainder of his original sentence in confinement. Therefore, no new sentencing hearing was required. *See State v. Patrick Guyear Sartain*, No. M2007-01913-CCA-R3-CD, 2009 WL 276508, at *2 (Tenn. Crim. App. Feb. 4, 2009) ("Once there is sufficient evidence to establish a violation of a community corrections sentence, the trial court has the authority to revoke the community corrections sentence and order the original sentence to be served in confinement" without an additional sentencing hearing.).

The record reflects that the Defendant acknowledged multiple incidents of illegal drug use while serving his community corrections sentence and acknowledged that he attempted to falsify a drug test. Knowing that the trial court had issued a violation warrant, the Defendant left the state and failed to report to his case officer for over four years until he was apprehended by law enforcement. The court considered that the Defendant repeatedly failed to follow the requirements of his community corrections sentence and that the Defendant had a significant drug problem, which negatively affected his ability to care for his son and himself. As a result of the Defendant's drug use and past behavior in the community corrections program, the court saw little prospect of the Defendant's long-term success in community corrections. The court considered the best interests of the Defendant and the community and placed its reasoning on the record in determining the appropriate consequence of the revocation. The court did not abuse its discretion in revoking the Defendant's community corrections sentence and ordering him to serve the remainder of his original sentence in confinement. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-5-